Ms. Baumann, good morning. May it please the court, counsel. This case, in this case the district court completely missed the forest for the trees. And I'm first going to talk about the retaliation argument. Ms. Baumann, before you go too far down the road, can I clarify please? Are you only appealing the rulings as to the 2018 failure to promote and retaliation, not the 2019? I am appealing the 2019 as well. I am not, we're not appealing the overtime or the acting up, thank you, or the acting up. Though I reviewed the settlement and Vassileva won and those we did settle. Okay. But you are, it's your position as you stand here that you're appealing the 2019 as well. Yes. And I'll tell you why. We, although clearly that 2019 action was not included in the original EEOC filing, was filed prior to that occurrence, the complaint itself that was filed with the EEOC was premised on the failure to allow Tinka, my client, Ms. Vassileva, to move up within the Department of Water. And I originally filed the federal complaint, I think in June, and then Judge Gettleman permitted me to amend the complaint in October. And at that time, although the specific allegations as to either the 2018 and 2019 were not included in the amended complaint, the amended complaint clearly covered the failure to promote, clearly stated that it was a continuing course of conduct, that it was a continuation of the prior failure to allow her to complete, and this is language from the complaint, during all relevant times, in contrast to her similarly situated colleagues, plaintiff has been denied the ability to fairly compete in the interview process. And then the dates were, the date was amended, I think it read February of 2018, I amended it to March 5th, 2018, through the present, defendant continues to retaliate, continues to discriminate. So the question is, does that 2019 claim arise out of, or can it reasonably said to arise out of the EEOC charge? And it's our contention that it absolutely is like, or reasonably related to the allegations of the charge, and they grow out of the charge. She has filed now many complaints with IDHR, Illinois Department of Human Rights, with the EEOC, and they have done nothing. There is nothing to indicate that in this instance, they would have all of a sudden considered the 2019 charges, and as I said, Judge Feinerman allowed me to amend the complaint, the intention was to include the allegations for 2019. What's the strongest, let's assume, I think your position's clear, and we'll figure out whether it's in or it's out, what's your strongest evidence, substantive evidence, that you brought forth enough at summary judgment to get to a jury with respect to both 18 and 19? As this court has said numerous times now, the court has to consider the fabric of the evidence, and I'm talking about Ortiz. This is not a McDonnell Douglas burden-shifting case. My client is not similarly situated to anyone, truly, at the Department of Water because of what she's gone through. She's been there since 2001. She wasn't promoted to an FE3 until 2019. I think the strongest argument is just the posting itself. The job posting does not require, by its very language, that supervision be a necessary part of the job position. She was allowed by Mr. Weiss to interview for the 2016 position in 2017. She went through that interview, and that is what we were attacking, actually, in Vasileva 1. I'll say we did many depositions. The litigation was quite extensive, and no one ever argued that an FE2 could not apply. What's your strongest argument of discrimination? You're addressing now whether or not she was qualified, but what's your strongest argument of discrimination? Their explanation for what they did is simply a lie. It's a lie. You mean the promotion of Jacob, whatever his name is, or Jacek Robleski? There were three people promoted to the FE5 in this case, and Jacek had seniority over her. So did the second gentleman. The third gentleman did not have seniority, Mr. Inouez. So there was Jacob, Keon, and Inouez. Inouez did not have seniority over her, and she was denied the ability to interview for the job position, and she should have been allowed. If this court were to accept the city's denial that Mr. Weiss says, oh, I didn't know about these charges, well, look, let's be realistic. She filed two charges in 2017 before the IDHR. They were dismissed on March 27th of 2018, April 4th of 2018. Those charges alleged the same conduct that were essentially alleging here. In that case, she was allowed to interview. In this case, she was not allowed to interview. There is nothing in writing, there is nothing other than Mr. Weiss's statement that he learned from the subject matter experts that she was not qualified. And I'll read you what he said. I believe I aired by putting her on that list, and that's why she was there. We have since had a general, and he says, not regarding her in particular. When I say we, the Department on Rules on How to Evaluate Candidates, and he goes on to explain the intake process, and he explains how he spoke to Edward Salinas, and how he spoke to others about the position during the intake meeting. So it's clear that, one, he was an intimate part of those original complaints which were filed in 2017, but two, that he was in direct contact with the decision makers. In this case, in particular, Edward Salinas and Yadi Babakur. These are the same actors that have acted across the board, and for the court to just accept that, oh, he didn't know that she had filed, no, he knew, he had to have known. He was human resources. So I see I have a minute, a little less than a minute, that I'll reserve for rebuttal if there are no additional questions. Okay, very well, thank you. Ms. Baumann, Mr. Alperstein, good morning. Good morning, Your Honors, and may it please the Court. The District Court correctly granted summary judgment on all of plaintiff's discrimination and retaliation claims in this case. Today, I will focus primarily on the 2018 FE5 failure to promote claim. I will briefly address plaintiff's FE4 claim as well. I will not address the acting up in overtime claim as plaintiff's counsel concedes that is not properly before this Court. The District Court correctly granted summary judgment on the FE5 discrimination claim because plaintiff has adduced no evidence in the record to satisfy the factors that this Court considers. First, under both the holistic approach and McDonnell-Douglas, although I have heard that plaintiff is not proceeding or intending to proceed under McDonnell-Douglas, this Court considers the treatment or the employer's treatment of similarly situated employees and, in particular, whether the ultimately promoted employee was not better qualified than the plaintiff. Neither is the case here. The employee who was ultimately promoted to the position was serving at the time of application as an FE4 supervisor, which is two promotional levels above the entry-level FE2 position that the plaintiff was serving as. Similarly, all three applicants who interviewed for the position, again, were serving as FE4 supervisors. And, conversely, all three FE2 applicants who applied, including the plaintiff, were rejected for failing to meet the qualifications of the position. Accordingly, there are no—plaintiff can point to no similarly situated comparator who is treated any differently in this case. Does that matter for the Ortiz analysis? It does. The holistic approach looks at a number of factors. I mean, it looks at the evidence as a whole, of course, but this Court has listed a few factors that this Court considers, and that is the treatment of similarly situated comparators, evidence of pretext, and the existence of ambiguous or suggestive comments or conduct. So I do think the similarly situated analysis is very relevant under Ortiz and indicates that there is no case for discrimination here. Plaintiff also has not— As I recall, this lady indicated that she had served in a supervisory capacity temporarily during her tenure and that this ought to count. This—your response below is, well, no, it has to be only if it's part of the job description. The question I have for you is, did—at that point, did the plaintiff come back and try to demonstrate that your explanation really doesn't hold water, that other people have had temporary supervisory positions and have been considered, anything of that nature? Was there any rebuttal evidence to your position? No, Your Honor. There is no rebuttal to Martin Wise, who is the recruiter for the FE5 position. He explained that the year of supervisory experience requirement refers to experience served in a supervisory capacity or in a position where supervision is an essential job function. That statement is unrebutted. I'm certainly not aware of any evidence in the record of an FE2 who was promoted to such a position despite not having that supervisory experience. I would point out as well on that point that most of the instances the plaintiff provides of when she supervised or allegedly supervised as an entry-level FE2 occurred when she was acting up as an FE3, and written departmental policy, which is in the record, which we cite in our brief, specifically prohibits the use of acting up experience to count towards the supervisory requirement. That was my next question. It is in writing. Yes, yes. So as we just discussed on the qualifications point, Mr. Wise explained without rebuttal that the FE2 position that plaintiff held was not a supervisory position. The FE4 supervisor position that the applicants who interviewed held was a supervisory position, and for that reason there is no evidence that plaintiff was qualified for the position sought. Next, I want to address the issue of pretext, which is another factor that this court considers under the Ortiz analysis. Plaintiff's entire theory of pretext seems to be that because she interviewed for an must have been lying when he said that applicants must have supervisory experience. And I want to address that and explain that Mr. Wise's explanation in his deposition was that plaintiff's interview in 2016 was essentially an error on his part. His job was to screen out applicants who were not qualified for the position, and he failed to do so for two FE2 applicants who applied. However, that explanation is unrebutted. There is certainly no evidence in the record to indicate that he was lying about that, and that explanation is perfectly consistent with the hiring practices for the position in 2018. Again, as I mentioned, all of the applicants who interviewed for the position were serving as FE4 supervisors. Every FE2 applicant was rejected for failing to meet the qualifications. And so even looking at the evidence as a whole, I don't think that there's any reasonable inference of pretext in this case. One final factor I wanted to discuss on the discrimination analysis is the existence of ambiguous or suggestive comments or conduct. Plaintiff certainly identifies quite a number of comments made by various co-workers and supervisors that she claims are discriminatory, but this court's precedent has been clear that any comment or conduct to support an inference of discrimination must meet three requirements. It must first be made by the decision maker, second, it must be made around the time of the decision, and third, it must be made in reference to the decision. Not only does plaintiff fail to meet all three requirements, she in fact meets none of them. It is undisputed that not a single one of the comments that she identifies was made by Mr. Wise, who everyone agrees was the decision maker, nor were any of those comments made around the time of the 2018 interview decision, and nor do any of them make any reference to that decision. And so none of those comments or conduct that she raises can support an inference of discrimination. Addressing briefly the retaliation point as well, this court has been clear that no retaliation claim can proceed if the decision maker was not aware of the plaintiff's protected activity. Here, Mr. Wise directly stated in his declaration and in his deposition that he had no awareness of plaintiff's filing of administrative charges or the prior lawsuit against the city. There is no evidence in the record to rebut that. Is that just for 2018, or did he say that with respect to 19 as well? I believe that that's just with respect to the 2018. I believe the 2019 failure to promote claim involves a different person, Sharon Jackson, the administrative services officer. I believe Mr. Wise was talking specifically about the 2018 FE5 promotion. Because Mr. Wise explained he was unaware of the plaintiff's protected activity, that statement is unrebutted. I know the plaintiff has speculated that perhaps Mr. Wise was not being truthful because he works for the city of Chicago, and other people who work for the city of Chicago knew about her charges. There is no evidence in the record of anybody telling him about it. There's no evidence in the record that Mr. Wise was not being truthful when he said he had no awareness. I would just point out that this court has noted multiple times, for example, in Igasaki, that it is insufficient at summary judgment for a plaintiff to simply question the veracity of a witness or a deponent. There must be specific evidence in the record that the person is lying. I will briefly address the FE4 failure to promote claim. I do not intend to address the merits unless this court has questions, because the claim is procedurally barred for multiple reasons. First, it is waived for failure to address the district court's ruling and failure to develop an argument on appeal. It is also undisputed that the plaintiff needed to exhaust administrative remedies. There's nothing in the record indicating any exhaustion of remedies, and that's why the district court so held. Plaintiff's counsel, in opening, made some reference to an amended EEOC complaint. I'm not aware of anything, certainly in this record, on that. I would also note that there was no reply brief filed, and that oral argument is not the time to be raising new documents or new arguments. Unless this court has any further questions, I would rest on our briefing and ask that this court affirm the decision of the district court. Thank you. Okay. Very well, Mr. Alperstein. Thanks to you. Ms. Baumann? Yep, yeah. We'll give you a minute. Justice Ripple, in answer to your question, Chinka was absolutely qualified to apply for this position according to the plain terms of the position description. As she was in 2016, she was in 2018 as well. The position states either supervisory experience or experience and training can be considered. Counsel said no one is not aware of anyone who's gone from a two to a four FBE. That's false. Andrea Putz with the Department of Water Management did, I'm sorry, move from a two to a five. Um, again, the issue was never raised in Vasileva that Chinka was somehow not qualified. This was a made up after the fact justification. Um, and, and with that, I ask that this court return this matter to the district court. Thank you. Okay, Ms. Baumann. Thanks to you. We'll take the appeal under advisement.